**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARTIN BRENNAN and THEODORA BRENNAN, | : |
| Plaintiffs, | : Civil Case No. 07-4364 (FSH) |
| v. | : **OPINION** |
| ROCCO PALMIERI, JAMES GASPARINI, JOHN LAFORGIA, ALLEN SMALLHEER, RICHARD MASTRANGELO, JOSEPH CATENARO, DAVID PARIS, LYNN CENTONZE, STEVEN GUTKIN, LOUIS CAMMARATA, TOWNSHIP OF FAIRFIELD, and JOHN DOES 1 THROUGH 10 | : Date: December 11, 2008 |
| Defendants. | : |

**HOCHBERG, District Judge**:

        This matter comes before the Court upon two motions to dismiss Plaintiffs' First

Amended Complaint, one filed on July 2, 2008 by all defendants other than David Paris (Dkt. 75)

and a second filed by Defendant David Paris on July 14, 2008 (Dkt. 78).  Both motions move to

dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  This Court has reviewed the motions without oral

argument pursuant to Fed. R. Civ. P. 78.

1

## I.      Factual and Procedural Background

_____This action arises out of an alleged conspiracy among various officials in the Township of Fairfield to violate the rights of Plaintiffs Martin Brennan ("Brennan") and his wife, Theodora Brennan.[1]  The complaint alleges that the officials sought to punish Brennan for certain actions taken by him, in his official law enforcement capacity as a police officer, at a public meeting held on October 16, 2006.

The Defendants in the case are Rocco Palmieri, who was the Mayor of Fairfield; James Gasparini, John LaForgia, Allen Smallheer, and Richard Mastrangelo, who were all members of the Township Council of Fairfield; the Local Governing Body of the Township of Fairfield; David Paris, the Township attorney; Joseph Catenaro, the Township Administrator; C. Lynn Centonze, the Township Chief of Police; Steven Gutkin, a Detective Lieutenant in charge of the Internal Affairs Unit; Louis Cammarata, a Detective Sergeant in the Internal Affairs Unit; and the Township of Fairfield.  The complaint also names fictitious defendants John Doe 1-10.   The individual Defendants are all sued in their personal capacity only.

In response to Plaintiff's initial complaint, Defendants moved, in lieu of an Answer, to dismiss pursuant to Rule 12(b)(6).  On June 4, 2008 this Court issued an Opinion and Order dismissing certain counts in their entirety with prejudice and dismissing other counts without prejudice, subject to Plaintiff's filing of an Amended Complaint.  Because the original complaint failed to clearly specify how each individual defendant was personally involved in the alleged

---

[1] Although the Amended Complaint continues to name Theodora Brennan as a plaintiff, it neither presents facts concerning her nor alleges violations of her rights.  Mrs. Brennan has no right to recover under any of the causes of action that remain at issue.  Indeed, Mrs. Brennan's per quod claims were dismissed with prejudice by an Order issued by this Court on June 4, 2008.  Accordingly, the caption of this proceeding will be revised to name Martin Brennan as the sole plaintiff unless an objection, supported by a reasoned basis, is filed on or before December 19, 2008.

violations, the Court instructed Plaintiff to file a chart with his Amended Complaint detailing specific factual allegations against each of the individual defendants.[2]  The Court also noted that unless Plaintiff offered additional facts regarding the Township's actions, his claims against the Township would be confined to those concerning the hiring of a special prosecutor and the conferring of final disciplinary authority upon the hearing officer retained to hear disciplinary charges against Brennan, which Defendants conceded were sufficiently specified.

On June 24, 2008, Plaintiff filed an Amended Complaint and Appendix.  In the Amended Complaint, Plaintiff asserted the following causes of action: (1) violation of the First Amendment right to freedom of speech; (2) violation of Article I of the Constitution of the State of New Jersey; (3) conspiracy to deprive persons of their civil rights under 42 U.S.C. § 1985; (4) neglect to prevent civil rights violations under 42 U.S.C. § 1986; (5) civil conspiracy; (6) violation of the New Jersey Conscientious Employee Protection Act ("CEPA"); (7) negligent hiring and supervision of township employees; (8) intentional infliction of emotional distress; and (9) misrepresentation of facts.  At the close of discovery, Plaintiff voluntarily dismissed

---

[2] In this chart, the Court ordered Plaintiff to include:
> (1) a list of each individual Defendant joined in this action;
> (2) a summary of each of the claims asserted against individual Defendants in Plaintiff's Amended Complaint;
> (3) a description of the factual actions or statements taken or made by each individual Defendant that establishes that his conduct was:
> > (a) outside the scope of his employment; and
> > (b) constituted a crime, fraud, malice, or willful misconduct
> (4) the approximate date and/or time of such statements or actions;
> (5) the location of such statements or actions.

The purpose of this chart was to identify the actions taken by each individual that would help establish the basis for a personal capacity lawsuit and show how each official, while acting under color of state law, retaliated against Brennan and caused the deprivation of his federal rights.  The requests for information concerning whether each defendant's actions fell outside the scope of employment and constituted a crime, fraud, malice or willful misconduct were made not because such proof is required for Plaintiff's federal claims, but because evidence on those issues relates to Defendants' potential immunity to Plaintiff's state law claims.  Because those counts have since been dismissed, such information is no longer relevant or required.

Counts Two, Five, Seven, Eight and Nine.  The Court now addresses the Defendants' Motions to Dismiss as they relate to the remaining counts.

## II.    <u>Standard of Review</u>

To survive a Rule 12(b)(6) Motion to Dismiss, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-1965 (2007).  According to the Third Circuit, "stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element.  This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (internal quotations omitted) (citing *Twombly*, 127 S. Ct. at 1965).

Although a court does not need to credit a complaint's "bald assertions" or "legal conclusions," it must view all of the allegations in the complaint as well as all reasonable inferences that can be drawn therefrom in the light most favorable to the plaintiff.  *Morse v. Lower Merion Sch. Dist*., 132 F.3d 902, 906 (3d Cir. 1997) (citing *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989)); *see also In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1429-30 (3d Cir. 1997).  The Supreme Court recently held that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 127 S.Ct. at 1969.  In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court may consider only the Complaint, exhibits attached to the Complaint, matters of public record, and undisputedly authentic documents if the Plaintiff's

4

claims are based on those documents. *Pension Guaranty Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1992).

**III.**   **Analysis**

   A.   Count One: Freedom of Speech

In order to survive a motion to dismiss, a plaintiff who pleads a retaliation claim under the First Amendment must "allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Township*, 463 F.3d 285, 296 (3d Cir. 2006).  With respect to all defendants but the Township, Plaintiff's complaint is a "personal capacity suit" brought under 42 U.S.C. § 1983. To pursue personal liability in a § 1983 action, a plaintiff must contend that the official, acting under color of law, caused the deprivation of a federal right.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

In particular, a plaintiff must "aver facts demonstrating that each individual defendant personally participated in violating plaintiff's rights, or . . . directed others to violate them or . . . had knowledge of and acquiesced in his subordinate's violations." *Baker v. Monroe Township*, 50 F.3d 1186, 1190-91 (3d Cir. 1995).  "Any allegations of participation or actual knowledge and acquiescence must be made with 'appropriate particularity' and need include the conduct (including time and place) of the persons allegedly responsible." *Boykins v. Ambridge Area Sch. Dist.*, 621 F.2d 75, 80 (3d Cir. 1980).  Moreover, the Third Circuit has held that the Supreme Court's holding in *Twombly* applies to § 1983 actions.  Thus, to survive a motion to dismiss, a complaint must have "not merely a short and plain statement, but instead . . . a statement

5

'showing that the pleader is entitled to relief.'  That is to say, there must be some showing sufficient to justify moving the case beyond the pleadings to the next stage of litigation." *Phillips*, 515 F.3d at 234-35 (quoting *Twombly*, 127 S. Ct. at 1964).

As with Plaintiff's initial complaint, the Amended Complaint as written does not clearly specify which individuals committed the wrongful acts alleged, nor are times and places sufficiently delineated for the majority of the acts alleged.[3]  The Court permitted the filing of an Amended Complaint in the expectation that such deficiencies would be cured.  For the most part, Plaintiff has failed to do so.  While allegations have been sufficiently particularized as to Defendants Centonze and Palmieri,[4] clear allegations that support a personal capacity suit against the remaining individual defendants have not been made.  Without demonstrating personal participation in, direction of, or knowing acquiescence in the alleged violation of Plaintiff's rights, Plaintiff has failed to demonstrate an entitlement to relief against the other individual defendants.

---

[3] The allegations made in Paragraph 97 of the Amended Complaint, for example, are exactly the same as those made in the initial complaint.  Again, they do not satisfy the pleading requirements.  As another example, rather than provide individualized allegations detailing the personal involvement of Defendants Gasparini, LaForgia, Smallheer, and Mastrangelo, as ordered by the Court, Plaintiff provided virtually identical, vague and non-specific explanations of how these defendants "agreed to support the subversion of disciplinary proceedings" or "were aware that the proceedings against Brennan were being manipulated to achieve a pre-determined result."  These pleadings do not provide the "appropriate particularity" required to justify moving the counts against these defendants to the next stage of litigation.

[4] The allegations against Police Chief Centonze and Mayor Palmieri, in contrast, are at this point sufficiently pled to survive this motion.  Defendants do not contest the particularity of the claims made against Centonze because the opening and conduct of the investigation and the filing of charges against Brennan were acts that fell squarely and solely within her statutory responsibility.  Additionally, the information provided concerning Mayor Palmieri, such as Plaintiff's allegations that Palmieri proposed the appointment of a special prosecutor, allegedly communicated to the prosecutor that "his job was to punish Brennan," and acquiesced in many of Centonze's actions, is also presented with a greater degree of particularity.  Plaintiff's allegations concerning Palmieri are, therefore, sufficient to establish his alleged personal involvement in the alleged deprivation of Brennan's federal rights to a degree needed to survive this motion.

Plaintiff's claims against the Township of Fairfield are controlled by *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978).  The law does not recognize municipal respondeat superior liability under § 1983.  Accordingly, a municipality may be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue, or, in other words, where its policies are the "moving force" behind the constitutional violation.  *Id.* at 694-95.  To succeed against the Township, Plaintiff must show that the municipal action was "taken with the requisite degree of culpability" demonstrating a "direct causal link between the municipal action and the deprivation of federal rights."  *Board of County Com'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997).  The only allegations in Plaintiff's initial complaint that related to policies of the Township were those concerning the appointment of a special prosecutor and the conferring of disciplinary authority on such special prosecutor.

Although specifically given the opportunity to introduce additional facts supporting his other claims against the Township, Plaintiff has not done so.  Plaintiff presented no new allegations of municipal policies and offered no new facts tending to show a direct causal link between municipal actions and the deprivation of his federal rights.  Because Plaintiff has failed to allege with sufficient specificity additional actions attributable to a policy or direct action by the Fairfield governing body, Plaintiff may pursue his § 1983 action against the Township only as to the two claims concerning the special prosecutor.[5]

---

[5] The factual allegations underpinning these claims against the Township are laid out in Paragraphs 77, 84, 90, 97(j), 102 and 103 of the Amended Complaint.  Plaintiff has not specifically pled a separate count against the Township, his first cause of action, as directed to the Township.  Going forwards, however, his claim for relief from the Township under the remaining counts will be limited to the allegations set forth in these paragraphs.

Finally, Defendant Paris raises the absolute litigation privilege as a defense to these claims.[6]  Defendant Paris argues (and Plaintiff concedes in the Appendix to the Amended Complaint) that at all relevant times he was a private attorney representing the Township of Fairfield.  The allegations against him arise from advice and counsel he provided with regard to proposed disciplinary action against Brennan.  Indeed, many of the statements identified by Plaintiff were made at public meetings where Paris was clearly acting in his capacity as Township counsel.  That many of these statements were made after the Township had decided to initiate disciplinary action against Brennan only confirms that they fall squarely within the litigation privilege.  Plaintiff responds that Defendant Paris committed fraud and/or participated in a conspiracy with the other Defendants and, as such, is not protected by the absolute litigation privilege.  Plaintiff does not, however, include specific allegations of fraudulent conduct by Defendant Paris that would support any reasonable conclusion that he was acting other than in his role as an attorney for the Township of Fairfield.  As a result, Plaintiff's First Amendment and civil rights claims, as well as his tort and other statutory claims are barred against Paris as a matter of law.[7]

For the reasons given above, Count One of Plaintiff's Amended Complaint is **DISMISSED** as to Defendants Gasparini, Mastrangelo, LaForgia, Smallheer, Catenaro, Paris,

---

[6] The litigation privilege protects attorneys from civil liability arising out of the performance of their duties. *See Loigman v. Township Committee of Middletown*, 185 N.J. 566 (2006).  The purpose of the privilege is to allow lawyers and litigants the opportunity "to speak and write freely without the restraint of fear of an ensuing action." *Peterson v. Ballard*, 292 N.J. Super. 575, 590 (App. Div. 1996).  The litigation privilege shields "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Hawkins v. Harris*, 141 N.J. 207, 216 (1995).

[7] Although discussed here in connection to the First Amendment retaliation claims made in Count One, Defendant Paris' assertion of the absolute litigation privilege bars all of Plaintiff's claims against him.  The Court will not repeat its analysis of the privilege in the discussion of the other disputed claims.

Gutkin, and Cammarata.  Count One is also **DISMISSED** as to Township of Fairfield, with the exception of those retaliation claims based upon the appointment of a special prosecutor and the conferring of disciplinary authority on a hearing officer as set forth in Paragraphs 77, 84, 90, 97(j), 102 and 103 of the Amended Complaint.

      B.    <u>Counts Three and Four: "Conspiracy to Deprive Persons of Their Civil Rights"</u>
              <u>and "Action for Neglect to Prevent Civil Rights Violation"</u>

Plaintiff alleges a conspiracy to deprive them of their civil rights in violation of 42 U.S.C. § 1985(3).  As the Court noted in its June 4 Opinion and Order, this count requires an initial showing of a Constitutional violation.  *Papaiya v. City of Union City*, 238 Fed.Appx. 848 (3d Cir. 2007) (holding that "Because § 1985 does not itself create any substantive rights but acts as a 'vehicle to vindicate [other] federal rights and privileges,' [plaintiffs] first must establish a violation of their constitutional rights in order to have a successful § 1985 claim.") (citing *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 805 (3d Cir. 2001)).  Moreover, a plaintiff must allege that the conspiracy was "motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws." *Cranbury Brook Farms v. Township of Cranbury*, 226 Fed.Appx. 92, 95 n.4 (3d Cir. 2007) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)). Plaintiff has failed to make allegations of a racial or class-based discriminatory animus in his Amended Complaint, and has thus failed to state a claim for constitutional conspiracy under 42 U.S.C. § 1985(3).

Plaintiff also alleges that Defendants neglected to prevent the implementation of such constitutional conspiracy, and are, therefore, in violation of 42 U.S.C. § 1986.  Claims made under § 1986, however, presuppose the existence of valid claims under § 1985, and require

dismissal of the former if and when the latter fail.  *Clark v. Clabaugh*, 20 F.3d 1290, 1295 n. 5

(3d Cir. 1994) (explaining that "[i]n order to maintain a cause of action under § 1986, the

plaintiffs must show the existence of a § 1985 conspiracy. Any issue of material fact in a § 1986

action presupposes and relates to a § 1985 conspiracy. Thus, if the elements of the § 1985

conspiracy are missing, a § 1986 cause of action is properly dismissed...").  Because Plaintiff has

not alleged a sustainable § 1985 claim, his § 1986 claim is also dismissed.

For the reasons given above, Counts Three and Four of Plaintiff's Amended Complaint

are **DISMISSED** as to all Defendants.

C.    Count Six: New Jersey Conscientious Employee Protection Act (CEPA)

Finally, Plaintiff alleges that Defendants retaliated against Brennan in violation of CEPA,

the New Jersey statute enacted to "protect employees who report illegal or unethical work-place

activities" from retaliation by their employers.  *Higgins v. Pascack Valley Hosp.*, 158 N.J. 404,

417 (1999) (quoting *Barratt v. Cushman & Wakefield*, 144 N.J. 120, 127 (1996)).  Although

Defendants do not seek dismissal of the CEPA claim in its entirety, they argue that the facts, as

alleged in the Amended Complaint, do not support a CEPA claim against the individual

defendants.[8]

CEPA provides, in relevant part, that:

---

[8] The Court, in its June 4 Order and Opinion, allowed Plaintiff's CEPA claims to proceed to discovery, "provided that Plaintiffs aver in the Amended Complaint the specific 'statute, regulation, rule or public policy that closely relates to the complained of conduct" and the "causal connection [that] exists between the whistle-blowing activity and the adverse employment action."  Plaintiff has not identified a specific statute, regulation, rule or public policy, but Plaintiff does indicate "suspicions of official misconduct on the part of Defendant Catenaro," which may form the basis for a valid CEPA claim.  New Jersey courts have held that the employee is not required to have "specific knowledge of the precise source of public policy" as long as the court can identify the law or public policy that might have been violated by the challenged conduct.  *McLelland v. Moore*, 343 N.J. Super. 589, 600 (App.Div. 2001); *see also Roach v. TRW, Inc.*, 164 N.J. 598, 610 (2000) ("[T]he Legislature did not intend to hamstring conscientious employees by requiring that they prove in all cases that their complaints involve violations of a defined public policy").

An employer shall not take any retaliatory action against an employee because the employee does any of the following:

a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer, or another employer, with whom there is a business relationship, that the employee reasonably believes:

> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law, including any violation involving deception of, or misrepresentation to, any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity, or, in the case of an employee who is a licensed or certified health care professional, reasonably believes constitutes improper quality of patient care; or

> (2) is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity;

b. Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer, or another employer, with whom there is a business relationship, including any violation involving deception of, or misrepresentation to, any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity, or, in the case of an employee who is a licensed or certified health care professional, provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into the quality of patient care; or

c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law, including any violation involving deception of, or misrepresentation to, any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity, or, if the employee is a licensed or certified health care professional, constitutes improper quality of patient care;

> (2) is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity; or

11

(3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

N.J.S.A. 34-19:3.

To establish a prima facie case under CEPA, a plaintiff "must demonstrate that: (1) he reasonably believed that his employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he performed a 'whistle-blowing' activity described in N.J.S.A. 34:19-3( c); (3) an adverse employment action was taken against him; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action." *Dewelt v. Measurement Specialties, Inc.*, 2007 WL 542234, *4 (D.N.J. 2007) (citing *Dzwonar v. McDevitt*, 177 N.J. 451, 462, 828 A.2d 893 (2003)).  In recognition of CEPA's remedial intent, courts have mandated that these requirements be liberally construed.  *See Palladino ex rel. U.S. v. VNA of Southern New Jersey, Inc.*, 68 F.Supp.2d 455, 473 (D.N.J. 1999); *see also Maimone v. City of Atlantic City*, 188 N.J. 221, 230, 903 A.2d 1055 (2006).

Although CEPA liability is explicitly limited to "employers," the term is defined broadly as:

> any individual, partnership, association, corporation or any person or group of persons acting directly or indirectly on behalf of or in the interest of an employer with the employer's consent and shall include all branches of State Government, or the several counties and municipalities thereof, or any other political subdivision of the State, or a school district, or any special district, or any authority, commission, or board or any other agency or instrumentality thereof.

N.J.S.A. 34:19-2(a).  Significantly, and contrary to Defendants' arguments, CEPA liability extends beyond the employing entity and "creates individual liability for agents of the employer,

12

including supervisory employees who act with the authorization of the employer."[9]  *Palladino*,

68 F.Supp.2d at 474 (holding that CEPA creates individual liability because the law's "plain

language could support individual liability, because no case law directly on point states that there

is not individual liability, because case law for other laws which do not allow for individual

liability is not analogous, and because the implications of various New Jersey Supreme Court and

District of New Jersey cases require a liberal reading of CEPA.").  *See also Dewelt*, 2007 WL

542234 at *22.[10]

　　　Defendants argue that, for reasons similar to those warranting dismissal of Count One,

"the factual allegations against all individual defendants but Chief Centonze are insufficient as a

--------

　　[9] CEPA defines the term "supervisor" to mean "any individual with an employer's organization who has the authority to direct and control the work performance of the affected employee, who has authority to take corrective action regarding the violation of the law, rule or regulation of which the employee complains, or who has been designated by the employer on the notice required under section 7 of this act."  N.J.S.A. 34:19-2(d).

　　[10] Defendants argue that, as a matter of law, liability may not be imposed on the individual defendants in this proceeding because these individuals fall outside the statutory category of "employer."  They contend that New Jersey courts "would not permit the language of CEPA to be stretched to permit individual liability of a member of a governing body, a coworker or even a supervisor."  In support, Defendants rely primarily on the New Jersey Supreme Court's recent interpretation of the term "employer" in *Cicchetti v. Morris County Sheriff's Office*, 194 N.J. 563, 947 A.2d 626 (2008).
　　The emphasis on this case, however, is misplaced.  First, *Cicchetti* examined the definition of "employer" in a different New Jersey Statute, the Law Against Discrimination ("NJLAD").  While CEPA and the NJLAD do share some similarities, courts in this district have specifically found differences between the two definitions of "employer" substantial enough to render analogies between the statutes inappropriate.  *Palladino*, 68 F.Supp.2d at 472 (discussing the "crucial difference between the definitions of employers in the two statutes," and concluding that it is not "a minor distinction, since it is the very inclusion of that language in CEPA which would create individual liability.").
　　Additionally, Defendants appear to ignore substantial state and federal case law permitting claims against individual co-employees or supervisors under CEPA.  As the court recently confirmed in *Zanes v. Fairfield Communities, Inc.*, "the substantial weight of authority, indeed all other authority" is contrary to the position that supervisors may not be held liable under CEPA.  2008 WL 2780461, *6 (D.N.J. 2008).  *See also Fasano v. Fed. Reserve Bank of N.Y.*, 457 F.3d 274, 289 (3d Cir.2000); *Dewelt v. Measurement Specialties, Inc.*, 2007 WL 542234 at *20-26 (D.N.J. Feb. 15, 2007); *Espinosa v. County of Union*, 2005 WL 2089916, (D.N.J. Aug. 30, 2005), aff'd by 212 Fed. Appx. 146 (3d Cir.2007); *English v. Misys Int'l Banking Sys.*, 2005 WL 1703199, (D.N.J. July 20, 2005); *Sunkett v. Misci, Jr.*, 183 F.Supp.2d 691, 716 n. 12 (D.N.J. 2002); *Bowen v. Parking Authority of Camden*, 2003 WL 22145814 at *22 (D.N.J. Sept.18, 2003); *Maw v. Advanced Clinical Comm., Inc.*, 359 N.J.Super. 420, 439-40, 820 A.2d 105 (App.Div.2003), rev. on other grounds by 179 N.J. 439, 846 A.2d 604 (2004); *Gunnings v. Borough of Woodlynne*, 2007 WL 4591290 at *13 (D.N.J. Dec.28, 2007).

matter of law to support a claim of retaliation [under CEPA] against such individuals in their

personal capacities."  In large part, Defendants are correct.  Although CEPA can impose

individual liability on agents or employees of the employer entity, it "will not impose liability on

any employee, supervisor, commissioner, or attorney *unless* the plaintiff proves that the

defendant took an adverse employment action against him because of his whistle blowing."

*Bowen*, 2003 WL 22145814 at *23 (emphasis added); *see also English*, 2005 WL 1703199

(denying the dismissal of a CEPA claim against an individual defendant where the complaint

sufficiently alleged that the defendant personally terminated plaintiff's employment).  Plaintiff is,

therefore, required to aver factual allegations that, if accepted as true, could establish how each

individual defendant was personally liable for a CEPA violation.  Plaintiff's Amended Complaint

would need to show, for example, that each defendant took a retaliatory adverse employment

action against Brennan that was causally linked with Brennan's alleged disclosure of "unethical,

unlawful, illegal, fraudulent, and corrupt activity."

        Despite the Court's instructions to provide a detailed factual information chart with the

Amended Complaint so that the acts allegedly committed by each individual defendant could be

ascertained, Plaintiff has again not alleged facts sufficient to support a CEPA claim against the

individual defendants other than Police Chief Centonze and Mayor Palmieri.  As a result, Count

Six of Plaintiff's Amended Complaint is **DISMISSED** as to Defendants Gasparini, Mastrangelo,

LaForgia, Smallheer, Catenaro, Paris, Gutkin, and Cammarata.  Plaintiff's CEPA claims against

the Township and against Defendants Centonze and Palmieri are sufficiently pled to proceed.  If

Plaintiff is able to prove a causal relationship between these individual defendants and adverse

employment decisions, as well as the other required factors required, Plaintiff will be able to hold

them responsible as agents of the Township.

**IV.    <u>Conclusion</u>**

       For the reasons given above, the Court grants Defendants' Motion to Dismiss in part.  An

appropriate order will issue.

                                       **/s/ Faith S. Hochberg**_____
                                       Hon. Faith S. Hochberg, U.S.D.J.